Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br><br>v.<br><br><br>LUIS XAVIER DE JESÚS RUIZ<br><br>Peticionario | KLCE202300272 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Caso Núm.<br>G LA2020G0068 AL 0075<br><br>Sobre:<br>Art. 6.05 L.A. y Otros |

Panel integrado por su presidenta, la Jueza Birriel Cardona, el Juez Bonilla Ortiz y el Juez Pagán Ocasio.

Pagán Ocasio, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 28 de abril de 2023.

### I.

El 20 de maro de 2023, el señor Luis De Jesús Ruiz (señor De Jesús Ruiz o el peticionario) presentó una petición de *certiorari*, en la que solicitó que revoquemos una *Resolución y Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Guayama (TPI), el 26 de enero de 2023.[1] Junto a su escrito, acompañó copia de la transcripción de la prueba oral (TPO) de la Vista Preliminar celebrada el 1 de diciembre de 2020, de forma ex-parte, sin haber sido estipulada con la parte recurrida. Mediante el dictamen recurrido, el TPI declaró "No Ha Lugar" la moción intitulada *Desestimación Invocando Justicia, Violación al Debido Proceso de Ley y Doctrina de Evidencia Exculpatoria*, presentada por el peticionario el 27 de septiembre de 2022.[2] En desacuerdo con el dictamen recurrido, el 8 de febrero de 2023, el señor De Jesús Ruiz presentó

---

[1] Registrada, archivada en autos y notificada a las partes el 30 de enero de 2023. Apéndice de la petición *certiorari*, Anejo I, págs. 1-5.
[2] Íd., Anejo XXV, págs. 46-50.

Número identificador
RES2023_____

una solicitud de reconsideración.[3] El TPI declaró "No Ha Lugar" dicha solicitud mediante *Resolución* del 16 de febrero de 2023.[4]

En atención a la petición de *certiorari*, el 23 de marzo de 2023 emitimos una *Resolución* en la que concedimos al Pueblo de Puerto Rico (Ministerio Público o parte recurrida) un término de diez (10) días, contados a partir de la notificación de la *Resolución*, para mostrar causa por la cual no debíamos expedir el auto de *certiorari* y revocar la *Resolución y Orden* recurrida. El 3 de abril de 2023, el Pueblo de Puerto Rico solicitó una extensión de dicho término. En atención a ésta, el 4 de abril de 2023 emitimos una *Resolución* en la que le concedimos un término final hasta el 12 de abril de 2023.

En esa fecha, el Pueblo de Puerto Rico presentó *Escrito en Cumplimiento de Orden*, en el cual arguyó que procedía denegar la expedición del auto de *certiorari* o, en la alternativa, confirmar la determinación recurrida. Además, solicitó que no tomemos en cuenta la TPO, toda vez que el peticionario incumplió con el procedimiento establecido en el Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, para su autorización y presentación ante este Tribunal.

Con el beneficio de la comparecencia de las partes, pormenorizaremos los hechos atinentes a la petición de *certiorari*.

## II.

El caso de marras tuvo su génesis en ocho (8) denuncias presentadas el 22 de febrero de 2020 por el Ministerio Público contra el peticionario, por presuntos hechos acaecidos el 21 de febrero de 2020.[5] En estas, el Ministerio Público le imputó al señor De Jesús Ruiz violación a los artículos 6.05[6] (Portación, Transportación o Uso de Armas de Fuego sin Licencia) y 6.09[7] (Portación, Posesión o Uso

---

[3] Íd., Anejo II, págs. 6-10.
[4] Íd., Anejo III, págs. 11-12.
[5] Íd., Anejos IV-XI, págs. 13-20.
[6] 25 LPRA sec. 466d.
[7] 25 LPRA sec. 466h.

Ilegal de Armas Largas Semiautomáticas, Automáticas o Escopeta de Cañón Cortado) de la Ley de Armas de Puerto Rico, Ley Núm. 168-2019, según enmendada, y cinco (5) infracciones al Art. 6.22[8] (Fabricación, Distribución, Posesión y Uso de Municiones; Importación de Municiones) de la citada ley. El 22 de febrero de 2022, el TPI celebró la vista de causa probable para arresto y determinó causa probable en todos los delitos imputados.

La vista preliminar se celebró el 1 de diciembre de 2020.[9] En ésta, el TPI determinó causa probable contra el peticionario por la comisión de los siguientes delitos: Art. 6.05, Art. 6.09, cinco (5) infracciones al Art. 6.22 y reclasificó el Art. 6.09 por violación al Art. 6.05 de la Ley de Armas. La lectura de acusación fue señalada para el 28 de diciembre de 2020 y el juicio en su fondo para el 20 de enero de 2021.

El Ministerio Público presentó las acusaciones el 8 de diciembre de 2020.[10] La lectura de acusación se celebró el 28 de diciembre de 2020.

En esa última fecha, el peticionario presentó una *Moción al amparo de la Regla 95*.[11] En el acápite (f), solicitó al Ministerio Público lo siguiente: "Cualquier información o evidencia exculpatoria conocida por el Estado que pudiera ayudar a la defensa en el presente caso, y si existe alguna duda, someter dicha información al Honorable Tribunal para que haga la determinación correspondiente".

El 19 de enero de 2021, la parte recurrida presentó *Contestación a Moción al Amparo de la Regla 95 de Procedimiento Criminal y Solicitud de Descubrimiento de Prueba a Favor del Ministerio Público Conforme a la Regla 95A de Procedimiento*

---

[8] 25 LPRA sec. 466u.
[9] Apéndice de la petición de *certiorari*, Anejo XII, págs. 21-22.
[10] Íd., Anejos XIII-XX, págs. 23-31.
[11] Íd., Anejo XXI, págs. 32-33.

*Criminal.*[12] En cuanto al acápite (f), el Ministerio Público contestó: "Nada que proveer". Además, la parte recurrida proveyó al peticionario copia de varios documentos, entre los cuales se encuentra copia de la *Solicitud de Servicio Forense AF-20-0273*, con fecha de 28 de febrero de 2020.[13] En dicho documento, se hizo referencia a una "pistola". Sin embargo, surge del documento que la marca, modelo, calibre y número de serie se encontraban bajo investigación.

Posteriormente, el Ministerio Público proveyó copia a la defensa del *Certificado de Examen*, expedido por el Negociado de Ciencias Forenses de Puerto Rico (el Negociado de Ciencias Forenses) el 29 de octubre de 2020.[14] En éste, se describió la "Pieza 2" como una pistola con marca, modelo, calibre y número de serie bajo investigación.[15] No obstante, en la parte de "Resultados", acápites 3 y 4, el Examinador de Armas de Fuego del Negociado expresó lo siguiente:

> 3. La pistola descrita en la pieza 2, **es del tipo AR-15.**
> 4. El calibre de la pistola descrita en la pieza 2 es: .223 Rem.
>    (Énfasis nuestro).[16]

El 24 de marzo de 2021, se dio por completado el descubrimiento de prueba y se señaló el juicio para el 6 de mayo de 2021.[17]

Luego de un año y medio, el 27 de septiembre de 2022, el peticionario presentó una moción que intituló *Desestimación Invocando Justicia, Violación al Debido Proceso de Ley y Doctrina de Evidencia Exculpatoria.*[18] Planteó que en la *Solicitud de Servicios Forense* se describió la pieza de evidencia recibida como una

---

[12] Íd., Anejo XXII, págs. 34-35
[13] Íd., Anejo XXXIII, págs. 36-37.
[14] El Negociado expidió una copia certificada el 2 de febrero de 2021. Íd., Anejo XXIV, págs. 38-45.
[15] Íd., pág. 38.
[16] Íd., pág. 40.
[17] Íd., Anejo XXXI, pág. 80.
[18] Íd., Anejo XXV, págs. 46-50.

"pistola" y no un "rifle", a pesar de que se le acusó por portación de un rifle, al amparo del Art. 6.09 de la Ley de Armas, *supra*. A su vez, señaló que en la *Sección de Armas de Fuego y Marcas de Herramienta* del *Certificado de Examen* se describió la pieza de evidencia como una pistola y no un rifle. Alegó que esos documentos constituían prueba exculpatoria, la cual resultaba favorable al acusado toda vez que el motivo fundado para la intervención fue que el Agente observó a plena vista un rifle. Adujo que, a pesar de que desde el 28 de febrero de 2020 el Estado produjo documentos que hacían referencia a la pieza ocupada como una "pistola", se celebró la vista preliminar sin que el señor De Jesús Ruiz fuese notificado de esos documentos que constituían prueba exculpatoria. Esgrimió que ello soslayaba su derecho constitucional a un debido proceso de ley.

En reacción, el 14 de octubre de 2022, el Ministerio Público presentó su *Contestación a Solicitud de Desestimación Invocando Justicia.*[19] Arguyó que el peticionario no citó regla procesal alguna que facultara al TPI a desestimar el cargo al amparo del Art. 6.09 de la Ley de Armas, *supra*. Esgrimió que, a su entender, se trataba de una solicitud al amparo de la Regla 64 (p) de Procedimiento Criminal, 34 LPRA Ap. II, R. 64 (p). Alegó que la controversia ameritaba la celebración de una vista en la que las partes pudiesen argumentar sus respectivas posturas.

Luego, el peticionario presentó *Oposición a Vista sobre Regla 64 P y Solicitud de Celebración de Vista de Desestimación para Evitar un Fracaso a la Justicia por Incumplimiento del Deber Ineludible de Divulgar Oportunamente Evidencia Exculpatoria en Violación al Derecho de una Representación Legal Adecuada, Derecho a Confrontación y Debido Proceso de Ley.*[20]

---

[19] Íd., Anejo XXVII, págs. 65-66.
[20] Íd., Anejo XXIX, págs. 73-78.

En una vista celebrada el 20 de diciembre de 2022, el TPI ordenó a las partes presentar un *Memorando de Derecho* en apoyo a sus respectivas posturas. En cumplimiento con la orden del TPI, el 20 de enero de 2023, el señor De Jesús Ruiz presentó un *Memorando de Derecho*.[21] Reiteró que el Ministerio Público no le proveyó copia de la *Solicitud de Servicio Forense AF-20-0273*, con fecha de 28 de febrero de 2020, y de la *Certificación de Examen*, emitida por el Negociado el 29 de octubre de 2020, con anterioridad a la vista preliminar del 1 de diciembre de 2020. A su entender, dichos documentos constituían prueba exculpatoria y favorable al peticionario, toda vez que la evidencia ocupada como un "rifle" fue identificada en dichos documentos como una "pistola". Planteó que los documentos eran prueba exculpatoria, pues el motivo fundado que tuvo el Agente para intervenir fue que observó a plena vista un rifle.

Además, el peticionario adujo que el Estado, como un solo ente, debió realizar las gestiones para obtener la *Certificación de Examen* del 29 de octubre de 2020 previo a la vista preliminar y ello era responsabilidad del Ministerio Público. Esgrimió que, sin embargo, el Agente de la Policía buscó dicha certificación el 2 de febrero de 2021. Arguyó que la supresión de buena o mala fe de la prueba favorable al peticionario, que conocía o debió conocer el Estado en el descargo de su función, constituía una violación a las garantías constitucionales. Alegó que se trataba de un asunto que debía ser atendido de inmediato y no debía aguardar a ser dirimido en un juicio. Por lo que, adujo que el caso debía ser devuelto a la etapa de vista preliminar.

Por su parte, el Pueblo de Puerto Rico presentó su *Memorando de Derecho*.[22] Alegó que el peticionario incumplió con el término que

---

[21] Íd. Anejo XXVI, págs. 51-64.
[22] Íd., Anejo XXVIII, págs. 67-72.

establece la Regla 64 (p) de Procedimiento Criminal, *supra*, R. 64 (p), pues una solicitud presentada más de seis (6) meses luego de haberse hecho una alegación, en ausencia de circunstancias excepcionales, era irrazonable.

Además, sostuvo que el agente investigador José M. Montes entregó las armas ocupadas el 28 de febrero de 2020 en el Instituto de Ciencias Forenses al técnico de control y custodia de evidencia, el cual describió el arma en controversia como una "pistola". Sostuvo que ese documento no constituía prueba exculpatoria toda vez que no reflejaba un estudio o evaluación del arma por un perito, sino que fue un trámite para custodiar la evidencia por un técnico no cualificado para emitir las conclusiones que pretendía la defensa del peticionario. Esgrimió que del mismo documento surge que la marca, modelo, calibre y número de serie del arma se encontraban bajo investigación y se solicitó un estudio pericial.

A su vez, el Pueblo de Puerto Rico alegó que no podía poseer conocimiento inmediato del resultado del examen por ficción legal alguna. Además, sostuvo que el proceso para obtener la *Certificación de Examen* estuvo sujeto a las limitaciones de la pandemia y a los trámites del Negociado de Ciencias Forenses, los cuales le impedían por ley al Ministerio Público intervenir para obtener información previamente. Señaló que del propio documento surgía que la copia de éste fue entregado al agente investigador el 2 de febrero de 2021.

Por otro lado, esgrimió que el asunto trataba de un testigo pericial y no de un testigo de hechos. Por lo que, adujo que la propia Regla 23 de Procedimiento Criminal, *supra*, R. 23, eximía de comparecer personalmente a los peritos. También, alegó que, en la *Certificación de Examen*, el perito describió el arma en controversia como una "pistola" del tipo AR-15 y calibre .223 Rem. "En otras palabras, es la plataforma o 'chassis' en su conjunto superior de un fusil con un cañón más corto, que es capaz de disparar el mismo

cartucho de un fusil AR-15".[23] Arguyó que la Ley de Armas establecía como un elemento principal distintivo entre una pistola y un rifle su diseño para disparar desde el hombro. Alegó que la conclusión sobre la clasificación del arma de fuego era una decisión judicial, que debía ser tomada a base de la interpretación de la ley y asistida por los peritos. Por lo que, solicitó al TPI que declarara "No Ha Lugar" la solicitud del peticionario.

El 26 de enero de 2023, el TPI emitió la *Resolución y Orden* recurrida, mediante la cual declaró "No Ha Lugar" la solicitud de desestimación.[24] El foro *a quo* resolvió que la *Certificación de Examen* no era prueba exculpatoria, pues se trataba, de todas formas, de un arma de fuego. Concluyó que, si entendiera que podría mover al TPI a determinar causa para juicio por otro Artículo de la Ley de Armas, hubiese procedido devolver el caso al acto de Vista Preliminar. No obstante, resolvió que la solicitud de la defensa fue tardía y en ninguno de sus escritos había mostrado causa justificada que llevara al Tribunal a no cumplir con lo dispuesto en la Regla 63 de las de Procedimiento Criminal, *supra*, R. 63. Así las cosas, determinó que el asunto en cuanto a las razones por las que el perito escribió la palabra "pistola" y no "rifle" debía ser dirimido en el juicio. En vista de ello, declaró "No Ha Lugar" la solicitud de desestimación.

En desacuerdo, el señor De Jesús Ruiz presentó una solicitud de reconsideración en la que reiteró que se trataba de prueba exculpatoria y procedía devolver el caso a la etapa de vista preliminar.[25] El 16 de febrero de 2023, el TPI emitió una *Resolución* en la que declaró "No Ha Lugar" la solicitud de reconsideración.[26]

---

[23] Íd., pág. 70.
[24] Íd., Anejo I, págs. 1-5.
[25] Íd., Anejo II, págs. 6-10.
[26] Íd., Anejo III, págs. 11-12.

Inconforme, el peticionario presentó la petición de *certiorari* e imputó al TPI los siguientes errores:

1. Erró el TPI al declarar no ha lugar la solicitud de desestimación de la determinación de causa por alegada violación de la Ley de Armas, al determinar que la defensa no mostró causa justificada por no haber presentado su solicitud dentro del término de la Regla 63 de Procedimiento Criminal.

2. Erró el TPI al estimar que a pesar que entiende que de haber tenido la defensa la oportunidad de presentar los documentos de Solicitud de Servicio y Certificación de Examen de la evidencia ocupada, pudo haber una determinación de causa distinta, sin embargo, no podía declarar ha lugar sus solicitud porque no se le mostró causa justificada de por qué no cumplir el Tribunal con la Regla 63 de Procedimiento Criminal.

3. Erró el TPI al castigar e imponer las consecuencias sobre la defensa y el acusado, a pesar que quien incurrió en dilación y negligencia de entregar prueba exculpatoria o que razonablemente sirve para impugnar la credibilidad del o de los testigos del Ministerio Público, fueron los funcionarios o agentes del Estado.

4. Erró el TPI al no considerar que, ante el planteamiento de prueba exculpatoria o que razonablemente impugna la prueba del Ministerio Público, no entregada o suprimida en la vista preliminar por los agentes o funcionarios del Estado, no aplican los términos de las mociones ordinarias, la obligación del Estado de presentar evidencia exculpatoria o de impugnación de la prueba principal de cargo, no parte del derecho estatutario a descubrir prueba favorable contenido en la Regla 95 de Procedimiento Criminal, sino del derecho constitucional al debido proceso de ley y del derecho a enfrentar prueba adversa. Erró también al no considerar que la entrega debe ser oportuna.

En su *Escrito en Cumplimiento de Orden*, el Pueblo de Puerto Rico alegó, en síntesis, que los documentos aludidos por el peticionario no constituían prueba exculpatoria. Esgrimió que el señor De Jesús Ruiz falló en demostrar, según exige nuestro ordenamiento jurídico, cómo la divulgación de los documentos, previo a la vista preliminar, hubiese provocado un resultado distinto. Señaló que, aunque el peticionario alegó que los documentos le permitirían contrainterrogar el testigo (Agte. José M. Motes Cordero) con mayor efectividad, ello no cambiaba el hecho de que el arma fue descrita como un AR-15 por el Examinador de Armas del Negociado y así fue descrita en la acusación. Por lo que, no procedía su solicitud de una nueva vista preliminar. Además,

argumentó que el Ministerio Público cumplió satisfactoriamente con su responsabilidad probatoria en la vista preliminar, la cual estaba limitada a presentar una *scintilla* de evidencia que diera lugar a una determinación *prima facie* sobre la comisión de un delito grave y su conexión con el imputado (citando a **Pueblo v. Pérez Delgado**, 2023 TSPR 35, 211 DPR _____ (2023)). Sostuvo que los planteamientos del peticionario, en cuanto a la impugnación del testigo en la vista preliminar, no bastaban para derrotar la determinación de causa probable.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. **Medina Nazario v. McNeil Healthcare LLC**, 194 DPR 723, 728 (2016); **IG Builders et al. v. BBVAPR**, 185 DPR 307, 337 (2012); **Pueblo v. Román Feliciano,** 181 DPR 679, 684-690 (2011)**; Pueblo v. Aponte**, 167 DPR 578, 583 (2006); **Pueblo v. Colón Mendoza**, 149 DPR 630, 637 (1999). Véase, además, la Regla 32 (D) del Reglamento del Tribunal de Apelaciones, *supra,* R. 32 (D). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. **Rivera Figueroa v. Joe's European Shop**, 183 DPR 580, 596 (2011).

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* R. 40, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari.*[27]

---

[27] Esta Regla dispone lo siguiente:
    El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

Reiteradamente, el Tribunal Supremo de Puerto Rico ha expresado que en su misión de hacer justicia la discreción "es el más poderoso instrumento reservado a los jueces". *Rodríguez v. Pérez*, 161 DPR 637, 651 (2004); *Banco Metropolitano v. Berríos*, 110 DPR 721, 725 (1981). La discreción se refiere a "la facultad que tiene [el tribunal] para resolver de una forma u otra, o de escoger entre varios cursos de acción". *Citibank et al. v. ACBI et al.*, 200 DPR 724, 735 (2018); *García López y otro v. E.L.A.*, 185 DPR 371 (2012). En ese sentido, ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Citibank et al. v. ACBI et al.*, supra; *Medina Nazario v. McNeil Healthcare LLC*, supra, pág. 729. Lo anterior "no significa poder actuar en una forma u otra, haciendo abstracción del resto del Derecho". *Hietel v. PRTC*, 182 DPR 451, 459 (2011); *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009); *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001); *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 658 (1997). Ello, ciertamente, constituiría un abuso de discreción.

Por otro lado, el Tribunal Supremo de Puerto Rico ha establecido que "la discreción que cobija al Tribunal de Primera Instancia en sus determinaciones discrecionales es amplia, por lo que sus decisiones merecen gran deferencia". *Citibank et al. v. ACBI et al.*, supra, pág. 735. Cónsono con ello, es norma reiterada

---

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

que este tribunal no intervendrá "con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por dicho foro en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto". *Citibank et al. v. ACBI et al.*, supra, pág. 736. Véase, además, *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

**B.**

Nuestro ordenamiento jurídico establece que la prueba exculpatoria es aquella favorable para el acusado, sin considerar su materialidad o confiabilidad. *Pueblo v. Torres Feliciano*, 201 DPR 63, 73 (2018) citando a *Pueblo v. Vélez Bonilla*, 189 DPR 705, 719 (2013). De la misma manera, la prueba de impugnación se considera favorable para el acusado, siempre y cuando al ser presentada por la defensa, pueda representar la diferencia entre una convicción o una absolución. Íd.

La obligación del Ministerio Público de presentar la prueba exculpatoria o de impugnación al acusado nace del derecho constitucional al debido proceso de ley y del derecho a la confrontación. *Pueblo v. Ortiz Vega*, 149 DPR 363, 391 (1999). El remedio ante este escenario es conceder un nuevo juicio, dependiendo del fundamento, conforme a las Reglas 187, 188 y 192 de Procedimiento Criminal, *supra*, Rs. 187, 188 y 192.

Al juzgador evaluar la referida prueba favorable, deberá considerar su naturaleza, peso y calidad para emitir su determinación. *Pueblo v. Torres Feliciano*, supra, pág. 74 citando a *Pueblo v. Echevarría Rodríguez I*, 128 DPR 299, 333 (1991).

Por otro lado, la Regla 63 de Procedimiento Criminal, *supra,* R. 63 rige lo atinente a las defensas y objeciones. La cita regla establece que:

Excepto las defensas de falta de jurisdicción del tribunal y la de que no se imputa delito, las cuales podrán presentarse en cualquier momento, cualquier defensa u objeción susceptible de ser determinada sin entrar en el caso en su fondo se deberá promover mediante moción presentada al hacerse alegación de no culpable o antes de alegar, pero el tribunal podrá permitir por causa justificada la presentación de dicha moción **dentro de un periodo no mayor de veinte (20) días después del acto de lectura de la acusación en los casos en que deba celebrarse dicho acto.** Cuando se hubiere entregado personalmente al acusado una copia de la acusación, el término para la presentación de esta moción será de no más de veinte (20) días desde que el acusado hubiese respondido. Cuando no hubiese contestado, el término será de no más de veinte (20) días después de que se registre la alegación de no culpable.

La moción incluirá todas las defensas y objeciones de tal índole de que pueda disponer el acusado. **La omisión de presentar cualquiera de dichas defensas u objeciones en el término dispuesto constituirá una renuncia de la misma**, pero el tribunal podrá eximir al acusado, por causa justificada, de los efectos de tal renuncia.

Una moción para desestimar basada en lo provisto en la Regla 64(n) (3) o (4) deberá presentarse antes de ser llamado el caso para juicio. (Énfasis suplido).

En otro extremo, la Regla 64 (p) de Procedimiento Criminal, *supra*, R. 64 (p) dispone que podrá presentarse una moción de desestimación basada en "[q]ue se ha presentado contra el acusado una acusación o denuncia, o algún cargo de las mismas, sin que se hubiere determinado causa probable por un magistrado u ordenado su detención para responder del delito, con arreglo a la ley y a derecho". La Regla 64 establece que una moción al amparo de lo provisto en esta "deberá presentarse, excepto por causa debidamente justificada y fundamentada, por los menor veinte días antes del juicio, salvo lo dispuesto en la Regla 63".

## C.

La Ley de Armas, *supra*, define el término "rifle" como: "[...] cualquier arma de fuego diseñada para ser disparada desde el hombro, que dispara uno o tres proyectiles. Puede ser alimentada manual o automáticamente por un abastecedor o receptáculo y se puede disparar de manera manual o semiautomática. El término

'rifle' incluye el término 'carabina'". Art. 1.02, inciso (kk), de la Ley de Armas, *supra.*[28]

## IV.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso de marras, a la luz de los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* R. 40, resolvemos que debemos abstenernos de ejercer nuestra función revisora. La *Resolución y Orden* recurrida es esencialmente correcta y no atisbamos ningún error que requiera nuestra intervención. Adviértase que el Ministerio Público entregó a la defensa la **Solicitud de Servicio Forense** el 19 de enero de 2021[29] y para la fecha del 25 de febrero de 2021 la defensa había recibido una de las certificaciones de las armas.[30] A su vez, ya para la vista del **24 de marzo de 2021** el Ministerio Público había entregado a la defensa la certificación de armas que faltaba y el foro *a quo* señaló juicio para el 6 de mayo de 2021.[31] Sin embargo, el peticionario presentó la moción de desestimación el **27 de septiembre de 2022, es decir, un año y medio luego haber recibido los documentos aludidos en su solicitud de desestimación.** En dicha solicitud, no se aludió a circunstancias excepcionales que justificaran tal dilación.

Por otro lado, la determinación de causa del TPI en la vista preliminar estuvo apoyada en la credibilidad que le mereció el testigo, agente José Montes M. Cordero. El peticionario planteó que la *Certificación de Examen* constituía prueba exculpatoria que fue suprimida por el Ministerio Público. Sin embargo, los resultados del arma en cuestión, según la *Certificación de Examen,* no contradicen

---

[28] 25 LPRA sec. 461a.
[29] Apéndice de la petición de *certiorari*, Anejos XXII y XXXIII, págs. 34-37. Véase, además, la *Minuta* de la vista del 25 de febrero de 2021. Íd., Anejo XXX, pág. 79.
[30] Íd., Anejo XXX, pág. 79. Véase, el *Memorando de Derecho* presentado por el peticionario ante el TPI. Íd., Anejo XXVI, pág. 60.
[31] Íd., Anejo XXXI, pág. 80. Véase, además, el *Memorando de Derecho* presentado por el peticionario ante el TPI, íd., Anejo XXVI, pág. 61; y el *Memorando de Derecho* presentado por el Pueblo de Puerto Rico ante el foro *a quo*, íd. Anejo XXVIII, pág. 67.

el testimonio del Agente. Según surge del documento, "la pistola descrita en la pieza 2, **es del tipo AR-15**" y "[e]l calibre de la pistola descrita en la pieza 2 es: .223 Rem". Por lo cual, resulta palmario que esa descripción no descarta en definitiva que se trata de un rifle conforme a la Ley de Armas, *supra*. Por lo que, la determinación recurrida no amerita nuestra intervención.

## V.

Por las razones expresadas, se *deniega* la expedición del auto de *certiorari*.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La Jueza Birriel Cardona disiente con opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>LUIS XAVIER DE JESÚS RUIZ<br><br>Peticionario | KLCE202300272 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Caso Núm.<br>G LA2020G0068 AL 0075<br><br>Sobre:<br>Art. 6.05 L.A. y Otros |

Panel integrado por su presidenta, la Jueza Birriel Cardona, el Juez Bonilla Ortiz y el Juez Pagán Ocasio.

# VOTO DISIDENTE
# DE LA JUEZA OLGA E. BIRRIEL CARDONA

Disiento de la mayoría, en particular de la afirmación que se realiza al final de la referida resolución y que reproduzco a continuación:

> Según surge del documento, "la pistola descrita en la pieza 2, es del tipo AR-15" y "[e]/ calibre de la pistola descrita en la pieza 2 es: .223 Rem". Por lo cual, resulta palmario que esa descripción no descarta en definitiva que se trata de un rifle conforme a la Ley de Armas, supra. Por lo que, la determinación recurrida no amerita nuestra intervención.

Es menester que se repase lo que dispone la Constitución de Puerto Rico en cuanto a que garantiza el derecho de todo acusado a preparar adecuadamente su defensa, lo que lleva consigo el derecho a informarse debidamente y a obtener, mediante descubrimiento de prueba, evidencia que pueda favorecerle. *Pueblo v. Sharma*, 167 DPR 2, 14 (2006); *Pueblo v. Arzuaga*, 160 DPR 520, 529-530 (2003); *Pueblo v. Santa-Cruz,* 149 D.P.R.

223, 231 (1999); *Pueblo v. Arocho Soto*, 137 D.P.R. 762, 766-768 (1994); *Pueblo v. Echevarría Rodríguez I*, 128 DPR 299, 324 (1991).

El derecho del acusado al descubrimiento de prueba tiene su fuente estatutaria en la Regla 95 de Procedimiento Criminal, 34 LPRA Ap. 11 y, de modo más amplio en la garantía constitucional a un debido proceso de ley. *Pueblo v. Rodríguez Sánchez*, 109 DPR 243, 246 (1979).

Por otra parte, dicha Regla 95 dispone que el Ministerio Público tiene la obligación de revelar a la defensa cualquier evidencia exculpatoria que tenga en su poder, aun cuando no se le haya solicitado. 34 LPRA Ap. II R. 95(b). Al respecto, el profesor Chiesa señala lo siguiente:

> [L]a violación al debido proceso de ley ocurre no sólo cuando el Ministerio Público no revela evidencia exculpatoria solicitada por la defensa; ocurre igualmente cuando, aun sin solicitud de la defensa, el Ministerio Fiscal no revela a la defensa evidencia que sabía, o debió haber sabido, que era favorable a la defensa. Ernesto L. Chiesa Aponte, Derecho Procesa/ Penal de Puerto Rico y Estados Unidos, Vol. III, a la pág. 315 (Ed. Forum, 1993).

Cónsono con lo anterior, nuestro más Alto Foro ha definido el término "evidencia exculpatoria" como "toda aquella que resulta favorable al acusado y que posee relevancia en cuanto a los aspectos de culpabilidad y castigo, irrespectivamente de la buena o mala fe exhibida por el Ministerio Fiscal". *Pueblo v. Echevarría Rodríguez I*, *supra*, a la pág. 333. La relevancia de dicha evidencia queda "condicionada a la impresión derivada por el foro apelativo de que la prueba exculpatoria suprimida, con una razonable probabilidad, habría alterado el veredicto o el castigo impuesto de haber sido presentada al juzgador de los hechos." *Íd*. Sin embargo, esta doctrina ha sido modulada en

*Pueblo v. Vélez Bonilla,* 189 DR 705 (2013), en cuanto a la conducta del Ministerio Público. Por lo tanto, para que el acusado pueda demostrar una violación al debido proceso de ley ante evidencia potencialmente exculpatoria, tiene que probar que el Estado obró de mala fe o, en su defecto, que actuó con negligencia.

Por tanto, "no tan sólo se trata de si el fiscal ha ocultado evidencia exculpatoria; la calidad y el peso de la misma es elemento tan o más importante que su propia existencia si tiene suficiente relevancia como para levantar una razonable probabilidad de que el veredicto o la pena pudieran haber sido distintos si se le hubiese considerado". *Íd*. En otras palabras, el conocimiento o desconocimiento que tenga el Ministerio Público sobre la existencia de la prueba favorable a la defensa del acusado "no tiene efecto alguno al determinar si al acusado se le violó el debido proceso de ley, puesto que lo que realmente cuenta es la posibilidad de daño al acusado y cómo tales hechos pudieran variar el veredicto. *Pueblo v. Velázquez Colón*, 174 DPR 304, 346 (2008). También, cuenta si el Estado obró de mala fe o de manera negligente conforme al reciente caso.

El señor Luis Xavier De Jesús Ruiz (peticionario) solicito la desestimación del cargo de Art. 6.09 de la Ley de Armas la que dispone:

**Artículo 6.09. Portación, Posesión o Uso Ilegal de Armas**

**Largas Semiautomáticas, Automáticas o Escopeta de Cañón Cortado**

**Toda persona que porte, posea o use sin autorización de esta Ley un arma larga semiautomática, una ametralladora, carabina, <u>rifle,</u> así como cualquier modificación de estas o cualquiera otra arma que pueda ser disparada automáticamente o escopeta de cañón cortado a menos de dieciocho (18) pulgadas, y que pueda causar grave daño corporal, o cualquier pieza o artefacto que convierte en arma automática cualquier arma de fuego, incurrirá en delito grave,**

**y convicta que fuere será sancionada con pena de reclusión por un término fijo de veinticuatro (24) años, sin derecho a sentencia suspendida**, o a **disfrutar de los beneficios de algún programa de desvío, bonificaciones o a cualquier alternativa a la reclusión reconocida en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta**. 25 LPRA S 466h.

El hecho de que se impute la portación de un rifle conlleva que la pena es de 24 años; pena a imponerse en ocasión de que recaiga un veredicto de culpabilidad al amparo de la citada disposición. En contraste, con las penas a imponerse en caso de que recaiga un veredicto de culpabilidad por posesión y portación de pistola- un arma de fuego- lo que, dependiendo de las circunstancias descritas en dichos artículos podría ser de 10 años en cada cargo. Veamos, las referidas disposiciones de la Ley de Armas a las cuales nos referimos:

**Artículo 6.05**. — Portación, Transportación o Uso de Armas de Fuego sin Licencia. (25 L.P.R.A. S 466d)

Toda persona que porte, transporte o use cualquier arma de fuego, sin tener una licencia de armas vigente, salvo lo dispuesto para los campos de tiro o lugares donde se practica la caza, incurrirá en delito grave y convicto que fuere, será sancionada con pena de reclusión por un término fijo de diez (10) años, sin derecho a sentencia suspendida, a, o a disfrutar de los beneficios de algún programa de desvío, o a cualquier alternativa a la reclusión reconocida en esta jurisdicción. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de veinte (20) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de cinco (5) años. […]

**Artículo 6.08**. — Posesión de Armas de Fuego sin Licencia. (25 L.P.R.A. S 466g) Toda persona que sin tener licencia de armas tenga o posea un arma de fuego, incurrirá en delito grave, y convicta que fuere será sancionada con pena de reclusión por un término fijo de cinco (5) años. De mediar circunstancias agravantes, la pena establecida podrá ser aumentada hasta un máximo de diez (10) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de un (1) año. Se considerará un agravante el que el arma haya sido reportada como robada o apropiada ilegalmente, o importada a Puerto Rico de forma ilegal.

La aludida certificación del Negociado de Ciencias Forenses que luego del estudio pericial y del examen de municiones realizado al objeto ocupado en la intervención con el peticionario se describe como pistola y no como rifle. Esto, resulta ser una información pericial sumamente importante en posesión del Estado el que no la proveyó a tiempo al peticionario, en particular antes de la vista preliminar que se llevó a cabo. Dicha evidencia exculpatoria es una sumamente relevante en torno a la ausencia del elemento de delito que configura el Art. 6.09 de la Ley de Armas. Lo anterior, afecta el derecho al debido proceso de ley del peticionario y tiene un peso contundente que hace sumamente meritorio ordenar la desestimación del cargo imputado de Art. 6.09 de Ley de Armas.

De otra parte, es necesario resaltar que, en *Brady v. Maryland*, 373 US 83 (1963), se estableció que el Estado tiene la obligación de descubrir toda evidencia favorable que sea relevante a la inocencia o al castigo del acusado, independientemente de la buena o mala fe del Ministerio Público. El Estado viola el debido proceso de ley consagrado en la Quinta y Decimocuarta Enmiendas cuando incumple con esta norma. Como parte del deber de descubrir, el Estado está obligado a preservar y entregar a la defensa toda evidencia exculpatoria que conozca o que recopile durante o luego del proceso investigativo. En ese contexto, la evidencia exculpatoria no es necesariamente aquella que de por sí sola es capaz de absolver al acusado. No se requiere tal potencial.

Más bien, es toda evidencia que llanamente pudiera favorecer al acusado, sin consideraciones en torno a su materialidad o confiabilidad. Su confiabilidad —cuán creíble es— y su materialidad —cuánto aporta en favor del acusado— son

asuntos que corresponde evaluar al foro de instancia. Prueba exculpatoria es toda aquella que resulta favorable al acusado y que posee relevancia en cuanto a los aspectos de culpabilidad y castigo.

Es sumamente pertinente destacar que la Sección de Armas de Fuego y Marcas de Herramientas del Laboratorio de Criminalística del Negociado de Ciencias Forenses tiene como objetivo fundamental el examinar mediante un análisis científico evidencia generada por un caso. En esta Sección se analiza toda la evidencia relacionada con armas de fuego ocupadas por la Agencias de Seguridad y Orden de Puerto Rico y Federales.

La Sección está compuesta por técnicos de laboratorios y examinadores de armas de fuego. Entre las funciones que realiza el personal se encuentran:

- Determinaciones Periciales
- Identificación de Armas
- Identificación de Casquillos
- Identificación de Proyectiles
- Marcas de herramientas
- Restauración de números de serie y marcas
- Identificación de Armas caseras
- Identificación de Impactos
- Comparaciones microscópicas de casquillos
- Comparaciones microscópicas de proyectiles
- Servicios de campo.

**Disiento en particular de la afirmación de la mayoría que expresa lo que destaco a continuación, por entender que <u>resulta contrario a la disposición constitucional del debido proceso de ley que cobija a todos los ciudadanos y al principio de legalidad</u>:**

"Según surge del documento, "la pistola descrita en la pieza 2, es del tipo AR-15" y "[e]l calibre de la pistola descrita en la pieza 2 es: .223 Rem". Por lo cual, *resulta palmario que esa descripción no descarta en definitiva que se trata de un rifle conforme a la Ley de Armas, supra. Por lo que, la determinación recurrida no amerita nuestra intervención*".

El principio de legalidad está consagrado en el Art. 2 del Código Penal de 2012, 33 LPRA sec. 5002, el cual dispone lo siguiente:

> **No se instará acción penal contra persona alguna por un hecho que no esté expresamente definido como delito en este Código o mediante ley especial, ni se impondrá pena o medida de seguridad que la ley no establezca con anterioridad a los hechos.**
>
> **No se podrán crear por analogía delitos, penas, ni medidas de seguridad.**

El referido artículo advierte que los hechos por los cuales pueda ser acusado una persona deberán estar claramente descritos por ley. Esta prohibición responde al requisito de que las leyes deben dar un aviso adecuado de las consecuencias penales de la conducta que ordenan prohíben.

El principio de legalidad es un conjunto de garantías al ciudadano, propias de un sistema de derecho constitucional y democrático. Este principio opera como un conjunto de reglas cuyo denominador común es la justificación para que la intervención del Estado en los asuntos de los individuos esté basada en la ley y no en la fuerza bruta. Asimismo, el principio de legalidad no es solo una exigencia de seguridad jurídica que requiere la determinación previa por ley de delitos y penas, sino que, además, es la garantía política de que la persona no será sometida por el Estado, ni por los jueces a penas que no admita el pueblo. D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte*

*General*, 7ma ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, Inc., 2015, pág. 69.

Nuestro Tribunal Supremo en *Meléndez v. Tribunal Supremo,* 90 DPR 656 (1964), puntualizó que lo que se persigue es que los tribunales, en su rol de interpretar la ley, no se excedan en sus funciones y adjudiquen las controversias a tono con la intención del legislador. La premisa básica del principio de legalidad puede resumirse en **que la ley escrita es la única fuente del Derecho Penal**. Nevares-Muñiz, *op. cit*., pág. 73; *Pueblo v. Santiago,* 98 DPR 82 (1969).

Por los fundamentos que anteceden, reitero que **disiento de la afirmación de la mayoría, por entender que <u>resulta contrario a la disposición constitucional del debido proceso de ley que cobija a todos los ciudadanos y al principio de legalidad.</u>**

Finalmente, concluyo que la denuncia y/o acusación por el Art. 6.09 de Ley de Armas que forma parte de los cargos contra el peticionario debe ser desestimada porque **la descripción del arma en definitiva no establece que se trata de un rifle conforme a la Ley de Armas**, supra y los tribunales no podemos añadir elementos a los delitos ya tipificados.

En San Juan, Puerto Rico, a 28 de abril de 2023.


Olga Birriel Cardona
Jueza de Apelaciones